## Hoyt et al. v. Kolber.

*Benjamin O. Frick*, for plaintiff; *Nathan J. Bonx*, for defendant.

LEWIS, J., January 5, 1932.—This matter comes before the court on a rule to strike off defendant's counterclaim.

Plaintiffs, a stock brokerage firm, brought suit on January 21, 1930, to recover an alleged debit balance in a trading account. On October 11, 1930, an affidavit of defense was filed. Two days previously, viz., October 9, 1930, an involuntary petition in bankruptcy was filed in New York against the plaintiffs. On October 14, 1930, the bankruptcy court in New York issued an order restraining all persons from instituting or prosecuting any action or suit against the alleged bankrupts. On May 11, 1931, a similar order was issued by the federal court for the Eastern District of Pennsylvania, and notice thereof was served on defendant on May 12, 1931. In the meanwhile, an offer of composition had been submitted to the federal court in New York on April 3, 1931. On April 15, 1931, defendant herein filed a proof of debt which is substantially identical with the counterclaim now filed in the action before us. On May 22, 1931, the offer of composition was approved by the federal court in New York and the bankrupts were discharged from bankruptcy, individually and as a firm. On May 19, 1931, three days before the discharge of the bankrupts, one of the partners, James E. Hoyt, in writing, agreed to waive the defense of bankruptcy in any action commenced by the defendant.

On October 21, 1931, the counterclaim now in question was filed. This counterclaim sets forth, *inter alia*, certain alleged purchases and sales which, if proven, would constitute a conversion of defendant's securities. In order, however, to bring his counterclaim within section fourteen of the Practice Act of May 14, 1915, P. L. 483, defendant has elected to waive the tort and sue on the contract.

This right of election is so firmly established in our practice that plaintiffs' petition raises no objection on that score: Weiner *v.* Schwartz, 87 Pa. Superior Ct. 551. The petition, on the contrary, is grounded (1) on the enjoining by the federal courts "of the institution and prosecution of suits against the alleged bankrupts (plaintiffs and petitioners herein), and (2) on the fact that upon confirmation of the composition offer of settlement the federal court specifically retained "jurisdiction of the cause for all purposes in connection with reclamation claims and disputed proofs of debt by general creditors."

Under ordinary circumstances, jurisdictional questions cannot be raised by a rule to strike off. A rule of this character, being in the nature of special demurrer, is closely restricted to questions of form, and our appellate courts have rigidly applied this test. See Knapp Bros. Mfg. Co. *v.* Robinson Electric Co., 18 Adv. Reps. 188, *et seq.* (published December 18, 1931). However, it is apparent in the brief, although not in the petition, that plaintiffs are relying on the remedy afforded by the legislature in the Act of March 5, 1925, P. L. 23, section 2, authorizing the raising of preliminary questions of jurisdiction by petition. We are persuaded that this act of assembly scarcely contemplated the sets of facts with which we are confronted, and hence we shall ignore the highly technical question of pleading involved and base our conclusion on what appears to us more substantial grounds.

"Where a state and a federal court have concurrent jurisdiction over the same parties or privies and the same subject matter, the tribunal where jurisdiction first attaches retains it exclusively, and will be left to determine the controversy and to fully perform and exhaust its jurisdiction and to decide every issue or question properly arising in the case:" 15 C. J. 1161.

Jurisdiction having originally attached in this court, it must be here retained, unless it be held that the various orders of the federal court apply to the person of the plaintiffs as well as to the bankrupt estate.

The order prohibiting suit against the alleged bankrupts is dated October 14, 1930, three days after the filing of the involuntary petition in bankruptcy. Such orders can scarcely be intended to strike down defenses to actions brought by the bankrupts before the filing of the bankruptcy petition and prosecuted by the bankrupts after their discharge. In addition, the composition offer having been confirmed, the general creditors can have no possible interest in this present controversy between plaintiffs and defendant.

This view as to the scope and duration of the original restraining order is affirmed, by implication, in the further order of the federal court, promulgated at the confirmation of the composition. In specifically retaining jurisdiction over disputed proofs of debt, the court tacitly recognizes the abrogation, by the discharge, of the earlier order.

It should be noted, however, that the present counterclaim is in no sense a disputed proof of debt. The counterclaim is grounded, it is true, on the same transactions as the proof of debt filed by defendant on April 15, 1931, and total or partial allowance of the proof of debt would result in defendant sharing as a general creditor in the proceeds of the bankrupt estate. But action on the present counterclaim is directed at the plaintiffs personally, and could in no way result in a charge against the bankrupt estate. Defendant seeks much more than a participation in the distribution of the assets in the custody of the bankruptcy court; if defendant's claims are sustained, he is entitled to personal judgments against the plaintiffs not dischargeable in bankruptcy.

The two matters differ in their essence, one is *in personam*, the other *in rem*, and the federal court is only concerned with the conservation of the *res*. "Where a creditor has another available remedy for the recovery of his debt

beside the presentation and allowance of his claim in the bankruptcy proceedings, he may pursue both remedies concurrently, although he can of course receive but a single satisfaction of his debt:" 7 C. J. 289, citing In re Sweetser, 128 Fed. 165, and Du Vivier *v.* Gallice, 149 Fed. 118.

The various collateral questions so ably discussed in the briefs of counsel, *e. g.,* the effect of a discharge as a bar to further suit on provable debts, the proper interpretation of the phrase "wilful and malicious injuries to property" as used in the Bankruptcy Act, the possible effect, in connection with the phrase, of defendant's voluntary waiver of the tort, the possible further effect of this waiver on the nature, whether joint or joint and several, of plaintiffs' liability—are in great measure immaterial to the narrow issue of jurisdiction now before us.

If our interpretation of the scope and duration of the restraining orders should be incorrect, and if defendant in filing his counterclaim be acting in violation of those orders, the situation can be speedily corrected by application to the federal court.

The rule to strike off counterclaim is discharged.