Commonwealth ex rel. Morse, Appellant, *v.* Glasgow.

Argued April 22, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Ralph C. Davis,* for appellant.

*Hugh D. Boyle,* with him *William J. Aiken,* for appellee.

OPINION BY CUNNINGHAM, J., July 15, 1938:

The history of this case goes back to December 18, 1922. At that time appellant and the original defendant (now deceased) were husband and wife and the parents of two small children. After a hearing upon a charge of desertion and non-support, preferred by his wife, defendant was ordered by the County Court of Allegheny County on that date to pay $20 per week, through the probation officer, for the support of the children. This was the first of a long series of orders relative to the payments to be made by defendant and the custody of the children—the last order having been made on September 15, 1932. An interval of six years (from August 1926 to August 1932) occurred during which no proceedings were had. In general, the orders awarded the custody of the children to their mother, subject to the right of their father to have them upon the days and during the hours specified, and directed him to pay the amounts fixed from time to time by the court for their support.

Sometime during the summer of 1926 appellant (having been divorced from defendant and having married Clyde Morse) moved to a western state taking the children with her. The defendant died on October 31, 1936, while the last order (entered September 15, 1932), was in force. By its terms that order became effective as of August 29, 1932. It is not controverted

that defendant, during the 218 weeks elapsing between the effective date of the order of September 15, 1932, and his death, faithfully paid the $12 per week as therein provided and, in fact, overpaid in the amount of $24.

About a year after defendant's death a controversy arose between appellant and the executors of his estate over the question whether defendant at the time of his death was indebted to appellant for any arrearages arising prior to August 29, 1932.

On September 9, 1937, appellant presented her petition in which she averred defendant, during his lifetime, had failed and neglected to comply with the various orders made against him to the extent of $4069, and prayed that judgment be entered against his estate in that amount. The executors in their supplemental answer conceded their testator was indebted at the date of his death for arrearages in the amount of $256.

The court below, after a full review and discussion of the entire record, held in an opinion by McKim, P. J., that the total amount of the arrearages due appellant was $289, and entered judgment against the estate of the defendant in that amount. The present appeal was taken by Mrs. Morse from that judgment.

The question involved is whether the court below erred in the interpretation placed by it upon three of the orders appearing upon the record—those of June 9, 1924, August 13, 1926, and September 15, 1932.

Prior to June, 1924, the orders had provided for weekly payments of $20. On the third of that month the defendant petitioned for a modification of the order then in force. On June 9, 1924, the first order involved under this appeal was entered. The material portions read: "It is ordered and decreed that the said defendant pay to the desertion probation officer appointed by court, the sum of ($12) Dollars per week for the support of his minor children, said money

to be turned over by said probation officer to Marion D. Morse, mother of [the] children, at the end of each month. ...... Defendant to have custody of children every Sunday from 2 to 6 P. M. and Friday evening for older son Ellis from 6 to 9 P. M. ...... Defendant pay $5 week on arrearages."

As we understand the record, appellant was divorced from defendant during 1924, and removed from the state with her second husband in 1926, taking the children with her. Additional orders relative to custody were made during 1925.

On August 13, 1926, defendant filed a petition averring, inter alia, that appellant had not complied with the provisions of the order of June 9, 1924, and subsequent orders relative to granting him temporary custody of his children but had removed them from the state, and praying that the order of June 9, 1924, be vacated. The following order was made upon that petition by JONES, J.: "Aug. 13th, 1926, on motion of counsel for petitioner the order of this court of June 9th, 1924, is hereby suspended as of May 1st, 1926, until further order."

It is at this point that the present controversy between the parties begins. Counsel for appellant contends the order was void because—no notice of the application was given appellant as required by the rules of the court below, no hearing was had, the averments of the petition were not sufficient to support it, and it was retroactive. Appellant's application for a judgment in her favor against her former husband's estate in the amount of $4069 is based upon the proposition that arrearages were accruing during the entire period from May 1, 1926, to August 29, 1932, the date upon which payments were resumed, as above stated.

In his opinion supporting his conclusion that the arrearages now due amount to only $289, Judge McKIM held, in effect, that the only valid objection made by

appellant to the order of suspension of August 13, 1926, was that it was retroactive. In the judgment entered by him he accordingly included payments at the rate of $12 per week from May 1st to August 13th, 1926, or a total of $180. The balance of the judgment—$109 —is the amount of arrearages, exclusive of those here in controversy, shown by the records of the "collection department" of the court below.

We think appellant was not in a position at the time she instituted the present proceeding to attack the order of suspension. It was plainly based upon the admitted fact that appellant by removing the children from Allegheny County made it impossible for the defendant to have their custody during the time specified in the then existing orders. The criticism of counsel for appellant that the suspension order should not have been made without notice to appellant, or her counsel if she was not within the jurisdiction, would have had weight if she had appealed from the order, or within a reasonable time had applied to the court for the reinstatement of the order of June 9, 1924. She did neither, but for a period of six years acquiesced in the suspension of payments. Nothing was done by her, looking toward the resumption of payments for the support of the children, until August 16, 1932. She then filed, through her attorney, a petition setting forth the order of June 9, 1924, averring the defendant had failed to comply therewith and praying for an attachment for the collection of alleged arrearages up to July 25, 1932, in the amount of $4033. After a hearing, the same judge who had entered the order of suspension in 1926 made an order, under date of August 29, 1932, directing the defendant to pay $12 per week "for the support of his minor children and pay $100 [per] month additional on arrearages, said money to be turned over by said probation officer to Marion D. Morse, mother of [the] children." Defendant was

further ordered to give bond in the sum of $8000 to comply with the provisions of the order, or be committed, etc. The defendant promptly applied for a rehearing and for the revocation of this order. Upon condition that he forthwith pay $150, a rule was granted upon appellant to show cause why a hearing should not be had and the order of August 29th revoked. Appellant filed her answer and that proceeding resulted in the filing by KENNEDY, P. J., of an order on September 15, 1932, the material portions of which read:

"And now, to-wit, September 15, 1932, after hearing in the above entitled case, the defendant is adjudged guilty of non-support, as charged in the information made in this case, and it is ordered and decreed that the said defendant pay to the desertion probation officer appointed by court, the sum of ($12) Twelve Dollars per week for the support of his minor children. . . . . . . It is further ordered that the defendant enter his own recognizance in the sum of ($1200) Twelve Hundred Dollars, conditioned for his compliance with the provisions of this order. . . . . . . This order to be effective as of August 29, 1932, upon which order, credit of $150 has been paid."

The above is the order referred to as the final one in the series and is the order with which the defendant fully complied up to the date of his death. Although a formal exception was granted to appellant's attorney no appeal was taken from the order. Again appellant acquiesced in the order and raised no question about any arrearages until after defendant's death, more than four years subsequent to the date of the order. It seems clear, from the direction that the order should be "effective as of August 29, 1932," that the court below, with the entire record before it, including the petition for an attachment to which we have referred, intended to, and did, substitute the order of September 15th for

the order of August 29, 1932. Its effect, as we view it, was to deny appellant's petition for an attachment for the arrearages claimed in her petition. In other words, every provision of the order of August 29th which was not carried into the order of September 15th was revoked. But as $150 had been paid on account of the arrearages referred to in the order of August 29th, as a condition for obtaining the rule for its revocation, it was necessary to make some provision for the disposition of this item. Appellant was permitted to retain it as a "credit" paid, prior to its revocation, upon the arrearages mentioned in the order of August 29th.

In deciding whether that order should be revoked, in whole or in part, the question of the alleged arrearages was necessarily before the court; they were specifically referred to in a stated amount of $4033 in the petition of the appellant filed August 16, 1932, and that petition contained a prayer that defendant "be adjudged in contempt and that an attachment may issue." The order of September 15, 1932, was an adjudication of every question which was raised, or could have been raised, at the hearing from which the order resulted: *Com. v. Bednarek,* 62 Pa. Superior Ct. 118; *Com. ex. rel. v. Iacovella,* 121 Pa. Superior Ct. 139, 182 A. 727.

If appellant and her then counsel did not consider the order of September 15th to be a full substitute for the order of August 29, 1932, she had a period of four years after its date and prior to the death of her former husband within which to apply for a modification or clarification of its terms, or to ask for an attachment for the collection of the arrearages which she now claims were due at the date of its entry. The fact that she waited until after the death of the defendant to make a claim for the arrearages here in question is not without significance. Our examination of the record has led us to the conclusion that the judgment

from which she has appealed gives her all she is entitled to receive from the estate of the defendant.

Judgment affirmed.